UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LLYRA A. CHAMBERS

                        Plaintiff,

      -against-

RECOVERY RACING III, LLC D/A/A FERRARI
MASERATI OF LONG ISLAND, EXPERIENCE
AUTO GROUP, INC., AND GIANNI MERCURI

                      Defendants.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
16-CV-2413 (JMA)(AKT)

**APPEARANCES:**

Gulsah Senol
Akin Law Group, P.L.L.C.
45 Broadway, Suite 1420
New York, NY 10006
    *Attorney for Plaintiff*

Barbara A. Gross
Hema Chatlani
Littler Mendelson, P.C.
900 Third Avenue
New York, NY 10022.3298
    *Attorneys for Defendants*

**AZRACK, United States District Judge:**

    Plaintiff Llyra Chambers brought this action against defendants Experience Auto Group ("Auto Group"), Recovery Racing III, LLC d/b/a Ferrari Maserati of Long Island ("Recovery Racing"), and Gianni Mercuri, alleging unlawful discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq., and the New York State Executive Law § 296, et seq.  Defendants now move to compel arbitration of plaintiff's claims and to stay the instant action pending arbitration.

    For the following reasons, defendants' motions are GRANTED.

## I. BACKGROUND

A.  **The Arbitration Agreement**

The following facts concerning the arbitration agreements at issue are taken from the exhibits provided by defendants.

On or around September 8, 2014, plaintiff was hired as a receptionist at Ferrari Maserati of Long Island, a car dealership owned and operated by defendant Recovery Racing in Plainview, New York. (Compl. ¶¶ 16, 20, ECF No. 1.)

On September 5, 2014, before beginning her employment, plaintiff signed an Employee Authorizations and Acknowledgements Form (the "Oasis Agreement") with Oasis Outsourcing, a "professional employer organization that provided human resources administration and other employee services to Recovery Racing." (Argüelles Decl. ¶ 5, ECF No. 9-2; see also Employee Authorizations & Acknowledgements ("Oasis Agreement"), ECF No. 9-3.) The Oasis Agreement states:

> I and Oasis agree that any legal dispute with my Worksite Employer, Oasis, or any other party that may have an employment relationship with me arising out of or in connection with my employment, application for employment, or separation from employment for which I am, was, or would be paid through Oasis, will be resolved exclusively through binding arbitration by a neutral arbitrator as provided in this agreement and, to the extent not inconsistent with this agreement, under the rules of a neutral arbitration service. The arbitrator will have the authority to grant the same remedies as a federal court (but no more), [and] will apply the Federal Rules of Evidence and any applicable statutes of limitation . . . . If for any reason a matter is not arbitrated, I AGREE THAT THE MATTER WILL BE HEARD BY A JUDGE AND WAIVE TRIAL BY JURY, and Oasis also agrees to waive trial by jury.

(Oasis Agreement at 1 (emphasis in original).) The Oasis Agreement defines the "Worksite Employer" as "the company for which [the employee] provide[s] services." (Id.) The Oasis Agreement also waives the employee's right to bring a dispute as a class action. (Id.)

On September 8, 2014, plaintiff signed the Recovery Racing Mandatory Arbitration

2

Agreement (the "Recovery Racing Agreement"). (Mandatory Arbitration Agreement ("Recovery Racing Agreement"), ECF No. 9-4.) The Recovery Racing Agreement states:

> Any Dispute between the undersigned Employee and the Corporation . . . which may otherwise be brought in a court or before a governmental agency, arising from or relating to the Employee's application for employment, employment, separation or termination of employment with the Corporation, shall be submitted to an impartial Arbitrator and determined by final and binding arbitration in accordance with the Corporation's Arbitration Rules (attached hereto).

(Id. at 1.) It further defines "dispute" as including, but not limited to, claims arising under:

> Title VII of the Civil Rights Act of 1964 . . . and equivalent state and local ordinances and regulations, as well as any other federal, state, or local personal injury, civil rights, or employment related laws, regulations, rules, or theories, including but not limited to claims of alleged unlawful discrimination or harassment.

(Id.) The Recovery Racing Agreement states that both the employee and the corporation waive their right to a trial by jury or court in any covered dispute. (Id. at 2.) It also explains that the Corporation's Arbitration Rules govern all arbitration proceedings and are incorporated in the Recovery Racing Agreement by reference. (Id.) Additionally, "[a]ll powers, rights, and obligations afforded arbitrators or the parties under the applicable federal or state arbitration codes, which conflict with any provisions included in this Agreement or in the Corporation's Arbitration Rules are expressly waived to the extent permitted by law." (Id.) The Recovery Racing Agreement also prohibits employees from bringing any disputes as class or collective actions. (Id.) Plaintiff contends that the Corporation's Arbitration Rules were not attached when she signed the Recovery Racing Agreement and were never provided to her. (Pl. Opp. 8, ECF No. 10.) Defendants do not dispute this allegation.

The Recovery Racing Agreement provided plaintiff with the "unconditional right" to reject the arbitration provision without affecting the remaining agreement with her employer by sending written notice to the employer by mail within thirty days. (Recovery Racing Agreement

3

at 2.) Plaintiff did not submit any written notice and, therefore, has not opted out of the arbitration provision. (Argüelles Decl. ¶ 9.)

The Recovery Racing Agreement was signed by both plaintiff and Beatris Argüelles, the Director of Human Resources and Payroll at Recovery Racing. (Recovery Racing Agreement at 3.) Both signatories indicated that they "had carefully read this Agreement," "were provided an opportunity to examine the Corporation's Arbitration Rules," "had the opportunity to consult with a legal advisor before signing," and "[understood] that both parties [were] giving up their right to trial by a court or jury." (Id.)

**B.      The Instant Litigation**

After receiving a notice of right to sue from the Equal Employment Opportunity Commission on March 7, 2016, plaintiff initiated the instant litigation by filing a complaint against defendants. (See Compl. ¶¶ 7–8.) In her complaint, plaintiff alleges that defendant Mercuri subjected her to numerous incidents of sexual harassment. (Id. ¶ 45.) Plaintiff also alleges that she was afraid to file a formal complaint but that, despite being aware of the harassment, management did not address the issue and, further, that plaintiff was ultimately fired for turning down Mercuri's sexual advances. (Id. ¶¶ 49, 54–55, 57.)

Defendants have moved under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2–4, to compel arbitration. Plaintiff opposes arbitration, asserting that the two agreements are unenforceable on various grounds.

## II.      DISCUSSION

**A.      Legal Standard**

The FAA "manifest[s] a liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Memorial

4

Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)). "The Second Circuit has held that '[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment.'" Clinton v. Oppenheimer & Co. Inc., 824 F. Supp. 2d 476, 480 (S.D.N.Y. 2011) (citing Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir. 2003)). In order to defeat a motion to compel arbitration, the opposing party must show a genuine issue of fact concerning the validity of the arbitration agreement. See, e.g., DuBois v. Macy's East Inc., 338 Fed. Appx. 32, 33 (2d Cir. 2009).

Plaintiff does not dispute that her claims are arbitrable or that they fall within the scope of the agreements. Instead, plaintiff alleges that a valid agreement to arbitrate does not exist between her and Recovery Racing. (Pl. Opp. at 8.) "Whether the parties agreed to arbitrate is determined by state contract law." Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 328 (S.D.N.Y. 2003) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); 9 U.S.C. § 2). Therefore, the validity of the arbitration agreements here will be determined based on the principles of New York state contract law.

**B.     The Arbitration Agreements Do Not Conflict**

Plaintiff first argues that the Oasis Agreement and Recovery Racing Agreement conflict and are thus both invalid. The Court finds that the two agreements neither conflict with nor invalidate one another. Each agreement independently provides for arbitration, and neither agreement purports to modify the other. Indeed, neither agreement implicates the other in any way.

Here, the existence of two separate arbitration agreements that do not conflict with one another simply has no bearing on the validity of either agreement. See generally Coheleach v.

5

Bear, Stearns & Co., 440 F. Supp. 2d 338, 340 (S.D.N.Y. 2006). Thus, plaintiff's first argument for the invalidity of the arbitration agreements is without merit.

C.    **The Recovery Racing Agreement Is Valid**

For the reasons that follow, the Court grants defendant's motion to compel arbitration based on a finding that the Recovery Racing Agreement is valid. Accordingly, it is not necessary to address the parties' arguments concerning the Oasis agreement.

Plaintiff argues that because the "Corporation's Arbitration Rules" were not provided to plaintiff, the arbitration agreement is invalid. This argument fails for three reasons.

First, the Corporation's Arbitration Rules were incorporated by reference into the Recovery Racing Agreement.[1] Under New York contract law, "[i]n the absence of fraud or other wrongful acts, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them." Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004). Therefore, when an employee signs an arbitration agreement in which arbitration rules are incorporated by reference, the employee assents to be bound by the agreement and those rules, even if she does not receive the rules. See, e.g., id. (holding that, although it may be troubling that a corporation incorporated arbitration rules by reference without providing them to plaintiff, plaintiff was bound by the arbitration agreement because it was his "responsibility to ensure he understood the document that he signed"); Badinelli v. Tuxedo Club, 183 F. Supp. 3d 450 (S.D.N.Y. 2016) (finding that a missing and unexplained dispute resolution provision that governed arbitration proceedings and was incorporated by reference did not invalidate the

---

[1] Plaintiff cites Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010) to support her argument that, "[a]lthough the parties had incorporated by reference arbitration rules, the Supreme Court clarified that incorporation by reference does not constitute clear and unmistakable evidence when invoked by a non-signatory, at least when the language of the arbitration clause only reaches disputes referred by a signatory." (Pl. Opp. at 10.) While plaintiff's argument is not completely clear, both plaintiff and Recovery were signatories to the ageement, making this statement inapposite.

6

arbitration agreement because plaintiff had the burden to address any concerns before signing the agreement and was presumed to have known and assented to the agreement).

Plaintiff relies on Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1 (1st Cir. 1999), for the proposition that an arbitration agreement is invalidated if an employee is not provided a copy of essential terms that are incorporated into the agreement by reference. This reliance is misplaced, as the Second Circuit has explicitly declined to follow the First Circuit's decision. See Gold, 365 F.3d at 149. Here, "the arbitration clause was broad and plain and put [plaintiff] on notice" that any disputes with her employer, including those enumerated in the agreement, could be subject to arbitration. Id. at 150. Plaintiff signed the document directly underneath the declaration that she "had carefully read [the] Agreement." (Recovery Racing at 3.) Furthermore, she had ample opportunity to request a copy of the rules or to opt-out of the arbitration agreement, and she chose not to do so. The Court cannot now invalidate the agreement and allow plaintiff "to benefit by her own inaction." Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004).

Second, even setting aside the presumption that parties are aware of the contents of documents incorporated by reference into a contract, the Corporation's Arbitration Rules appear to be purely procedural and are not the sort of "essential terms" whose absence might invalidate a contract. [2] See, e.g., Hojnowski v. Buffalo Bills, Inc., 995 F. Supp. 2d 232, 236 (W.D.N.Y. 2014) (holding that missing procedural rules did not make an arbitration agreement unenforceable because plaintiff "fail[ed] to point to any authority suggesting that the rules and

---

[2] Because plaintiff has never moved to compel production of the Corporation's Arbitration Rules, the rules themselves are not in the record. Since defendants have shown that an arbitration agreement exists, plaintiff bears the burden of providing evidence to show that this agreement is not valid. See DuBois, 338 F. App'x at 33 ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." (quoting Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995))).

7

procedures governing arbitration are essential terms"). Indeed, the lack of specific procedural terms within an arbitration agreement has no bearing on the court's determination concerning the agreement's enforceability. See, e.g., Wework Companies, Inc. v. Zoumer, No. 16-CV-457, 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) ("[T]he lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements." (citing 9 U.S.C. §§ 5, 7)); Hudson Specialty Ins. Co. v. New Jersey Transit Corp., No. 15-CV-89, 2015 WL 3542548, at *7 (S.D.N.Y. June 5, 2015) (same). Thus, the fact that plaintiff did not receive a copy of these rules does not invalidate the arbitration agreement.

Third, plaintiff's argument that the Recovery Racing Agreement does not satisfy the New York Statute of Frauds is unavailing. (Pl. Opp. at 9.) Although defendants do not respond to this argument, the Statute of Frauds does not apply to at-will employment contracts. See, e.g. Stucklen v. Kabro Assocs., 18 A.D.3d 461, 462 (N.Y. App. Div. 2d Dep't 2005). Furthermore, the terms at issue were incorporated by reference, which satisfies the Statute of Frauds. See, e.g. Agosta v. Fast Sys. Corp., 136 A.D.3d 694, 695 (N.Y. App. Div. 2d Dep't 2016) ("To satisfy the statute of frauds, an agreement 'need not be contained in one single document, but rather may be furnished by piecing together other, related writings.'" (quoting William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh, 22 N.Y.3d 470, 477 (2013))).

Thus, the Recovery Racing Agreement providing for arbitration is valid.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration and to stay the action pending arbitration is GRANTED, and the parties are ordered to arbitrate the case pursuant to the

terms of the Recovery Racing Agreement.  The Clerk of Court is directed to stay this case during the pendency of arbitration.

**SO ORDERED.**

Date: July 31, 2017
Central Islip, New York

     /s/ (JMA)     
Joan M. Azrack
United States District Judge
